OHIO EX REL. POPOVICI, VICE-CONSUL OF ROUMANIA, *v.* AGLER ET AL.

No. 35. Argued January 7, 8, 1930.—Decided January 20, 1930.

*Messrs. Atlee Pomerene* and *Malcolm Y. Yost,* with whom *Mr. Frank Harrison* was on the brief, for petitioner.

*Mr. Harry Nusbaum,* with whom *Mr. Henry W. Harter, Jr.,* was on the brief, for respondents.

Mr. Justice Holmes delivered the opinion of the Court.

The relator was sued for divorce and alimony in a Court of the State of Ohio. He objected to the jurisdiction of the Court, but the objection was overruled and an order for temporary alimony was made. He thereupon applied to the Supreme Court of the State for a writ of prohibition, but upon demurrer to the petition the writ was denied. 119 Ohio State, 484. A writ of certiorari was granted by this Court.

The facts alleged are that the relator is Vice-Consul of Roumania and a citizen of that country, stationed and now residing at Cleveland, Ohio, and it is said by the Supreme Court to have been conceded at the argument that he was married to Helen Popovici, the plaintiff in the original suit, in Stark County, Ohio, where she resided. The relator invokes Article III, Section 2, of the Constitution: " The Judicial Power shall extend . . . to all Cases affecting Ambassadors, other public Ministers and Consuls." " In all Cases affecting Ambassadors, other public Ministers and Consuls . . . the supreme Court shall have original jurisdiction "; and also the Judicial Code, (Act of March 3, 1911, c. 231) § 256, " The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States, . . .

Eighth. Of all suits and proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, or against consuls or vice-consuls." To this may be added § 24 giving to the District Court original jurisdiction " Eighteenth. Of all suits against consuls and vice-consuls "; the Supreme Court, by § 233, being given " exclusively all such jurisdiction of suits and proceedings against ambassadors or other public ministers, or their domestics or domestic servants, as a court of law can have consistently with the law of nations."

The language so far as it affects the present case is pretty sweeping but like all language it has to be interpreted in the light of the tacit assumptions upon which it is reasonable to suppose that the language was used. It has been understood that, " the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the' United States," *Ex parte Burrus,* 136 U. S. 586, 593, 594, and the jurisdiction of the Courts of the United States over divorces and alimony always has been denied. *Barber* v. *Barber,* 21 How. 582. *Simms* v. *Simms,* 175 U. S. 162, 167. *De La Rama* v. *De La Rama,* 201 U. S. 303, 307. A suit for divorce between the present parties brought in the District Court of the United States was dismissed. *Popovici* v. *Popovici,* 30 Fed. (2d) 185.

The words quoted from the Constitution do not of themselves and without more exclude the jurisdiction of the State. *Plaquemines Tropical Fruit Co.* v. *Henderson,* 170 U. S. 511. The statutes do not purport to exclude the State Courts from jurisdiction except where they grant it to Courts of the United States. Therefore they do not affect the present case if it be true as has been unquestioned for three-quarters of a century that the Courts of the United States have no jurisdiction over divorce. If when the Constitution was adopted the common understanding

was that the domestic relations of husband and wife and parent and child were matters reserved to the States, there is no difficulty in construing the instrument accordingly and not much in dealing with the statutes. 'Suits against consuls and vice-consuls' must be taken to refer to ordinary civil proceedings and not to include what formerly would have belonged to the ecclesiastical Courts.

It is true that there may be objections of policy to one of our States intermeddling with the domestic relations of an official and subject of a foreign power that conceivably might regard jurisdiction as determined by nationality and not by domicil. But on the other hand if, as seems likely, the wife was an American citizen, probably she remained one notwithstanding her marriage. Act of September 22, 1922, c. 411, § 3; 42 Stat. 1021, 1022. Her position certainly is not less to be considered than her husband's, and at all events these considerations are not for us.

In the absence of any prohibition in the Constitution or laws of the United States it is for the State to decide how far it will go.

*Judgment affirmed.*